**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ADVANCED HAIR RESTORATION LLC,

      Plaintiff,

          v.

RESTORATION HOLDINGS, LLC, and
JERRY DAVIS,

      Defendants.

No. 1:24-CV-11814

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Advanced Hair Restoration LLC brings this suit for unfair competition, breach of contract, misappropriation of trade secrets, and other declaratory issues under federal and state law. *See generally* R. 1, Compl.[1] Advanced alleges that Restoration Holdings, LLC (which operates under the name Restore), used Advanced's trademarks in ads to perpetuate a mistaken belief that Restore was the developer of a

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal question jurisdiction over the federal claims in this case, 28 U.S.C. § 1331, and supplemental jurisdiction over some (the exception is explained in the Opinion below) of the related state law claims, *id.* § 1367(a). The Court also has diversity jurisdiction over the state law claims for declaratory judgment, *id.* § 1332(a), except as to the claim involving tortious interference, as explained later. Complete diversity exists: Advanced is an LLC that is (via its membership) a citizen of Washington; Restore is an LLC that is a citizen of Colorado, Arizona, and Illinois; and Davis is a citizen of Kentucky. R. 39, Joint Juris. Mem.; R. 43, Pl.'s Juris. Supp. The amount-in-controversy requirement is met: Advanced seeks declaratory judgment to stave off a potential lawsuit for disparagement and for breach of contract that could exceed $75,000 if Advanced were found liable. *See* Compl. ¶¶ 73–79; *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) (recognizing that where a plaintiff seeks declaratory relief, "the amount in controversy is measured by the value of the object of the litigation"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

specialized hair-restoration technology; on top of that, Restore also allegedly misappropriated trade secrets and infringed on Advanced's patented hair-transplant technique. *Id.* Advanced also alleges that former contractor Jerry Davis helped Restore misappropriate Advanced's trade secrets in violation of a settlement agreement between the parties. *Id.* Restore and Davis move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Advanced's claims are inadequately pleaded and improper for declaratory judgment. *See* R. 17, Restore's Mot.; R. 42, Davis's Mot. Restore also contends that Advanced lacks standing to sue over the disputed patent. R. 58, Restore's Add'l Mot. For the reasons explained below, Davis's motion to dismiss is denied, and Restore's motion to dismiss is granted in small part and denied in large part.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in Advanced's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The allegations in the complaint span several years and involve multiple agreements and different forms of intellectual property. Advanced is a Washington-based provider of hair-loss prevention and hair restoration treatments. Compl. ¶¶ 1, 14. Over the years, Advanced has developed—and now owns a patent ("the '060 Patent") associated with—a hair-restoration surgical technique called "No Shave Follicular Unit Extraction (FUE)" that allows for follicular transplantation without needing to shave the area around the transplanted follicle beforehand. *Id.* ¶ 28; *see also* R. 1-1, Exh. 1, Katona Decl. ¶ 4;

2

R. 1-3, Exh. 3, '060 Patent Claims Tab.; R. 1-4, Exh. 4, '060 Patent. In connection with its hair-restoration services, Advanced also owns a registered trademark protecting its company name and purports to own two common law trademarks, one of which is the name of the patented surgical technology, No Shave FUE. Compl. ¶¶ 15–16. Advanced uses its trademarks heavily in its advertising and licensing, and they are recognized by customers as a source indicator. *Id.* ¶¶ 17–18.

Restore is an Illinois-based provider of hair-loss prevention and hair restoration treatments. Joint Juris. Mem.; *see also* Compl. ¶¶ 2, 11, 22. According to Advanced, Restore advertises its hair-restoration services to customers in Illinois under marks that are confusingly similar to theirs. Compl. ¶¶ 23–26. Restore only began doing so after Advanced's marks had become well known in the industry. *Id.* ¶¶ 26–27. Jerry Davis is a contractor who formerly worked with Advanced. *Id.* ¶ 28. While employed by Advanced, Davis acquired insider information about the company, including its vendor and customer lists, search-engine optimization strategies, and No Shave FUE technique. *Id.* But at some point in the last several years, Davis stopped working with Advanced and began working with Restore. *Id.* ¶¶ 29, 33. And in the course of his relationship with Restore, Davis has handed over the insider knowledge, confidential lists, and surgical protocols for No Shave FUE that he learned during his time with Advanced. *Id.* ¶¶ 33, 58; *see also* Katona Decl. Restore has thus begun offering a shave-less hair transplant surgery that is similar to Advanced's No Shave FUE. Compl. ¶ 67; Katona Decl. ¶¶ 6–7, 10–11. Advanced sent a notice letter to

3

Restore in November 2024 accusing the company of infringing on its intellectual property, but Restore has not changed its practices. Compl. ¶ 34.

After Davis ended his employment relationship with Advanced, Davis's company, LifeGoals Corporation, filed a breach-of-contract suit in Washington alleging that Advanced failed to pay for Davis's services and prevented him from fulfilling his duties under the contract. *See* Am. Compl., *LifeGoals Corp. v. Advanced Hair Restoration LLC*, No. 2:16-cv-01733-JLR (W.D. Wash. Dec. 13, 2016); *see also* Compl. ¶ 30. That lawsuit eventually ended in a settlement agreement between Davis, Restore, and Advanced. Compl. ¶¶ 30–31. As part of the settlement, Restore affirmed that it did not receive Advanced's trade secrets from Davis, and Davis affirmed that he did not disclose Advanced's information to Restore or anyone else. *Id.* ¶¶ 49–50. But as explained earlier, Advanced believes that Restore actually did receive trade secrets from Davis and failed to follow the breach-notification requirements under the agreement. *Id.* ¶¶ 52–54.

The final piece of this controversy involves Restore's founder, Dr. Arthur Katona, who directed the company from 2013 until around 2021. Katona Decl. ¶ 2. Upon leaving the company, Katona went to work for Advanced. Compl. ¶ 74. The specifics are not entirely clear, but at some point in the past, Advanced advertised that Katona—who apparently completed the work on many of the procedures used in Restore's advertisements—now works at Advanced. *Id.*; *see also* Restore's Mot. at 16. In October 2024, Restore sent Advanced a letter claiming that Advanced was tortiously interfering with a contract between Katona and Restore that had assigned

4

Katona's right to publicity to Restore. Compl. ¶ 76. The letter also accused Advanced of attempting to capitalize on Restore's goodwill and brand reputation by associating Advanced's services with Restore's. *Id.*

With those disputes swirling around the various parties, Advanced filed this lawsuit against Restore and Davis, alleging breach of contract, violations of federal unfair-competition law and state consumer-protection law, patent infringement, and misappropriation of trade secrets. *See* Compl. ¶¶ 35–72. Advanced also seeks declaratory judgments against the allegations of tortious interference with the Katona contract and disparagement in its advertisements, and Advanced also seeks to void the settlement agreement with Davis and Restore. *Id.* ¶¶ 73–85.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Unfair Competition

First up is Advanced's claim that Restore's advertisements unlawfully used Advanced's marks, thus constituting unfair competition under the Lanham Act. Compl. ¶¶ 44–47; *see also* 15 U.S.C. § 1125(a). As explained earlier in this Opinion, Advanced claims to have three trademarks associated with its business: one registered trademark in its company name, and two unregistered marks in the name of the hair-restoration procedures it offers. Restore argues that this claim must fail as

to the unregistered marks, "No Shave FUE" and "Advanced FUE," because the complaint does not allege that the marks are entitled to protection under the Act. Restore's Mot. at 11–12.[3] Advanced responds that the complaint sufficiently alleges entitlement to protection because it alleges facts supporting the marks' secondary meaning and because Restore's marks are similar enough to create a plausible likelihood of confusion. R. 25, Pl.'s Resp. to Restore at 7–11. Advanced is right; Restore demands too much at the pleading stage.

### 1. Protectable Right

Section 43(a) of the Lanham Act affords protection to certain unregistered trademarks and trade dress, alongside the protections given to registered trademarks by Section 32. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992). "To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). A plaintiff pleading a claim for an unregistered mark bears the burden of alleging that the mark is entitled to protection, and the distinctiveness of the mark is relevant to protectability. *See KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013–14 (N.D.

---

[3]The Court notes that Advanced's Lanham Act claim for trademark infringement appears to allege infringement of both the common law marks *and* the registered mark in the company's name. *See* Compl. ¶¶ 16–23 (describing the common law marks and registered mark as a collective grouping called "the Marks" in the complaint, and describing the "Accused Marks" as those that Restore advertises "under designations confusingly similar to the Marks"); *id.* ¶ 45 (alleging that Restore's advertisement using the "Accused Marks" are false designations amounting to unfair competition). But Restore appears to oppose, at this stage, only the protectability of the common law marks without arguing that the registered mark is invalid. *See* Restore's Mot. at 10–12.

Ill. 2014). "Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). Although Advanced does not explicitly specify which category it believes the marks fall into, its opposition brief implies that the marks are, at the very least, descriptive but now have secondary meaning. Pl.'s Resp. to Restore at 8–9 (arguing that the marks are protectable because they acquired secondary meaning); *see also KJ Korea*, 66 F. Supp. 3d at 1014 (noting that descriptive marks must have acquired "secondary meaning" to be protectable); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 935 (7th Cir. 1986) ("[A] term that is merely descriptive may be used as a trademark if it has acquired secondary meaning."). A descriptive mark describes some characteristic of the good or service and typically does not deserve protection—unless it has acquired some secondary meaning. *See Platinum Home Mortg. Corp.*, 149 F.3d at 727 (explaining that descriptive marks are "not protected … because a merely descriptive mark is a poor means of distinguishing one source of services from another" (cleaned up)).

The Seventh Circuit has instructed that "[s]econdary meaning exists only if most consumers have come to think of the word not as descriptive at all but as the name of the product." *Packman*, 267 F.3d at 639 (cleaned up). Thus, secondary meaning turns on whether there is "a *mental association* in buyers' minds between the alleged mark and a single source of the product." *Id.* at 641 (cleaned up) (emphasis in original). A plaintiff may show secondary meaning through "direct consumer

testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *KJ Korea*, 66 F. Supp. 3d at 1014 (cleaned up).

Restore argues that Advanced's unfair-competition claim must be dismissed because the complaint does not sufficiently allege facts establishing a protectable right. Restore Mot. at 11–12. Advanced responds that the allegations—that Advanced "heavily advertise[s]" the marks, that consumers associate it with the company, and that Advanced continuously uses the marks to advertise its services—are sufficient to plead a protectable right. Pl.'s Resp. to Restore at 8–9. The Court agrees: at the pleading stage, Advanced's complaint sufficiently alleges facts that, if accepted as true, suggest secondary meaning of the common law marks.

Advanced alleges that it is the "country's premier provider" of hair-restoration services, that the common law marks are "heavily advertised" and recognizable by the public in connection with Advanced's services, and that Advanced had "continuously used" the marks to advertise its services throughout the country. Compl. ¶¶ 14, 17–18, 25. It also alleges that Restore began using the marks after Advanced's "became famous," implying intentional copying. *Id.* ¶¶ 26–27. That is enough at this stage, particularly in a case involving the relatively specialized (and seemingly narrow) service area of no-shave hair follicle transplantation. Perhaps it would be different if instead of "No Shave FUE" and "Advanced FUE," Advanced was claiming that it had acquired secondary meaning of a much more generic service, like a car wash, and alleged secondary meaning for "No Brush Car Wash" or "Advanced Car Wash."

Indeed, unfair-competition claims are necessarily fact-specific and the depth of the pleading required at this stage is informed by the relative generality of the good or service itself. *See, e.g.*, *KJ Korea*, 66 F. Supp. 3d at 1014–15 (holding that "HEALTH KOREA" plausibly had secondary meaning, despite being merely descriptive, because the complaint alleged intentional copying and facts suggesting that the plaintiff had heavily invested in associating its name with the marks). It is sufficiently plausible that Advanced is the premier provider of "No Shave FUE" and "Advanced FUE" such that consumers now associate the terms with Advanced as the provider of the service.[4] To be sure, Advanced may face a heavy lift in trying to prove, after discovery, that the terms have acquired secondary meaning. But that is something that will be tested through the rigors of discovery and need not be firmly established in the pleading stage.

## 2. Likelihood of Confusion

Next, a plaintiff in an unfair competition suit must allege that "the defendant's use of the mark is likely to cause confusion among consumers." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). Courts in this Circuit look to seven factors to assess the likelihood of confusion: "(1) similarity between the marks in

---

[4]Restore argues that Advanced alleges "only the bare bones, conclusory allegations," amounting to a "[t]hreadbare recita[tion] of the elements." R. 38-1, Restore's Reply at 4 (quoting *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 603 (E.D. Pa. 2010)). Not so. The complaint provides factual allegations that must be accepted as true at this stage, stating that the marks are used heavily in advertising and recognized by customers as linked to Advanced as the leading provider in this industry. Compl. ¶¶ 14, 17–18, 25. It is true that the complaint also summarily claims that Advanced "acquired common law rights" to the marks, *see id.* ¶ 16, but that is not a factual allegation, and so it is not one upon which the Court bases its decision.

appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to palm off his product as that of another." *Packman*, 267 F.3d at 643 (cleaned up). The Seventh Circuit instructs that "[n]o single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented," but "in many cases, the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Id.*

The complaint plausibly alleges a likelihood of confusion under four of the factors. First, Advanced alleges that the marks used by Restore in its advertising are "substantially identical" to Advanced's common law marks, which supports that the marks are similar in appearance and suggestion. Compl. ¶ 24. Next, Advanced alleges that the products themselves are the same, because Restore offers its own shave-less hair-transplant procedure via the same methodology. *Id.* ¶ 67. Advanced also alleges that the geographic area of each company's use of the marks overlap with one another because Advanced advertises nationwide (including within Illinois) and Restore advertises in Illinois. *Id.* ¶¶ 11, 25, 67. Finally, Advanced alleges that its common law marks are famous and associated with Advanced as the premier provider of shave-less hair transplantation, thus supporting an inference that the common law marks are strong. *Id.* ¶¶ 14, 19. Thus, accepting these facts as true and drawing reasonable inferences in Advanced's favor, the same collection of words being used in similar areas and advertising the same procedure creates a plausible likelihood of confusion.

11

It is entirely possible that, with the benefit of discovery, Restore may demonstrate that consumers do not associate a "No Shave FUE" or "Advanced FUE" with Advanced's brand—or any brand—at all. But that is a matter for discovery. And at this pleading stage in the litigation, given the specialized service field at issue, and assuming the truth of Advanced's factual allegations, the complaint (as construed) plausibly states a claim for unfair competition under the Lanham Act.

### B. State Consumer Protection Claims

### 1. Illinois Consumer Fraud Act

Next, Restore argues that Advanced's state law claim for unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, should be dismissed for failure to state a claim. Restore's Mot. at 7–10. In particular, Restore contends that Advanced—as a non-consumer and non-citizen of Illinois—cannot sue under the Act. *Id.* at 8–10; *see also* Restore's Reply at 2–4. Once again, Restore demands too much at the pleading stage: Advanced has (just barely) plausibly alleged a private claim for unfair competition under state law.

The Fraud Act prohibits companies from deceiving consumers by engaging in "unfair or deceptive acts or practices ... with intent that others rely upon the concealment, suppression, or omission of such material fact ... in the conduct of any trade or commerce." 815 ILCS 505/2. "The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 954 (N.D.

Ill. 2016) (cleaned up). Illinois courts have concluded that "the General Assembly did not intend the Consumer Fraud Act to apply to fraudulent transactions which take place outside Illinois," *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 315 (Ill. App. Ct. 2007) (cleaned up), and so the allegedly fraudulent transaction at issue must have "occurred primarily and substantially in Illinois," *id.* Whether the transaction occurred "primarily and substantially" within the state is a fact-specific inquiry; that a policy was created in Illinois or disseminated from an Illinois head-quarters, without more, is insufficient. *Id.*[5]

Non-consumer plaintiffs must also allege a consumer nexus (that is, a con-sumer connection) by pleading: "(1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action in-volved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (cleaned up); *see also Downers Grove Volkswagen, Inc.*, 546 N.E.2d 33, 39 (Ill. App. Ct. 1989).[6] Advanced does not refute the contention that it is

---

[5]It is worth noting that Advanced maintains that it need not plead an Illinois trans-action for its Fraud Act claim. *See* Pl.'s Resp. to Restore at 6–7 (arguing that the requirements under the Fraud Act are the same as the requirements for federal infringement claims). But Illinois courts have clearly concluded that "the Act does not have extraterritorial effect," so the transactions at issue must have occurred within Illinois. *Avery v. State Farm Mut Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005); *see also Morsberger v. ATI Holdings, LLC*, 2023 WL 2711754, at *10 (N.D. Ill. Mar. 30, 2023) (citing *Crichton v. Golden Rule Ins. Co*, 576 F.3d 392, 396 (7th Cir. 2009).

[6]The Court recognizes that the Illinois Supreme Court's decision in *Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454 (Ill. 2024), overrules some applications of the

not a consumer of Restore's products or services, and the Court agrees that Advanced is not a "consumer" under the Fraud Act, so the consumer-nexus requirement applies to its claim. *See* 815 ILCS 505/1(e) (defining "consumer" as one "who purchases or contracts for the purchase of merchandise … for his use or that of a member of his household").

Upon satisfying these two preliminary requirements, Advanced must then allege—with particularity under Civil Rule 9(b)—the following elements of a Fraud Act claim: (1) an unfair or deceptive act or practice by Restore; (2) committed with the intent that consumers rely on it; (3) in trade or commerce; and (4) actual damage to Advanced (5) proximately caused by the deception. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019); *Avery*, 835 N.E.2d at 856; *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (citing *People ex rel. Hartigan v. Knecht Servs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. App. Ct. 1991)). "Courts apply a 'reasonable consumer' standard in evaluating the

---

test used in *Downers Grove,* explaining that "to the extent that [it] … hold[s] that a business bringing a claim under the Consumer Fraud Act need not allege or establish all the elements set forth [under the relevant case law], those decisions are overruled." *Id.* at 464–65. It is the Court's understanding that *Tri-Plex* only clarifies that the consumer-nexus test is not a *substitute* for the proximate-causation element of a Fraud Act claim, and rather an additional hoop that a non-consumer must jump through in pleading a claim under the Act. Advanced disagrees, again maintaining that it need only plead the elements of a federal infringement claim for the Fraud Act claim to survive. *See* Pl.'s Resp. to Restore at 6–7. In any event, the Court concludes that Advanced has sufficiently pleaded a consumer nexus, so this ambiguity in state law is ultimately not dispositive.

14

likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015)).

First, Restore argues that Advanced cannot sue under the Fraud Act because it is not an Illinois resident and does not allege facts connecting its claim to Illinois. Restore's Mot. at 8–9. Advanced appears to concede that it is a nonresident of the state, though it still argues that the "residency requirement is manufactured." Pl.'s Resp. to Restore at 7. True, for jurisdictional purposes, Advanced is a citizen of Washington, not Illinois. Joint Juris. Mem. But the transactions it complains of did presumably occur in Illinois, because Restore operates primarily in Illinois and the transactions at issue are between Restore and consumers within the state as a result of Restore's allegedly misleading advertisements. *See* Restore's Mot. at 13 ("Restore primarily conducts business in Illinois."); Compl. ¶ 11 (alleging that Restore resides in Illinois, conducts its business in Illinois, and infringed on Advanced's marks in Illinois); *id.* ¶ 40 (alleging that Restore uses Advanced's marks in advertisements "directed to consumers widely throughout this state"). Thus, Advanced has narrowly satisfied the pleading requirement for a nonresident under the Fraud Act, because it alleges that the problematic transactions underlying its claim "occurred primarily and substantially in Illinois." *Phillips*, 865 N.E.2d at 315 (cleaned up).[7]

---

[7]It may very well be the case that the damages arising out of the Fraud Act claim must be limited to sales made to Illinois residents and that Advanced is seeking to recover damages for transactions with out-of-state residents. But that is not a ground for dismissal of the claim in its entirety, and is an issue better resolved after discovery clarifies the claims in this case.

Next, Restore argues that Advanced—as a non-consumer of its services—has insufficiently alleged that its claim implicates the consumer concerns that the Fraud Act was enacted to protect. Restore's Mot. at 7–10. As a recap, a non-consumer plaintiff looking to bring a Fraud Act claim must allege facts to satisfy the consumer-nexus test, requiring "(1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Thrasher-Lyon*, 861 F. Supp. 2d at 912 (cleaned up). The Court agrees that Advanced's claim suffers from a lack of clarity in its pleadings, making it more difficult to pull out the relevant allegations to satisfy the consumer-nexus requirement. But Advanced alleges that "consumers are likely to be confused" and conflate Restore's services with Advanced's and that the advertisements at issue are directed at consumers. Compl. ¶¶ 37, 40. Advanced also alleges that it will be injured alongside consumers because Restore is trading on its goodwill to mislead consumers into believing that Advanced has approved of or affiliated itself with Restore's services. *Id.* ¶¶ 37, 43. Again, this is enough to allege a consumer nexus at this stage—albeit just barely—because it is clear from the face of the complaint that Advanced's Fraud Act claim is partially intended to protect consumers from confusion.

Finally, Restore argues that Advanced has not alleged a plausible infringement claim under the Fraud Act for the same reasons that it argues Advanced has not alleged a plausible Lanham Act claim. *See* Restore's Mot. at 7–10 (arguing for

dismissal of the Fraud Act claim); *id.* at 14 (arguing for dismissal of the Lanham Act claim for similar reasons). The Court disagrees, largely for the same reason that it disagreed with Restore's arguments for dismissal of the Lanham Act claim. Advanced alleges that (1) Restore is deceptively advertising its services to consumers using Advanced's marks, Compl. ¶ 36; (2) for commercial purposes, *id.* ¶¶ 23, 26; (3) with the knowing intent of causing confusion, *id.* ¶¶ 39, 42; (4) thus injuring Advanced by trading on its brand name and goodwill as the premier provider of shave-less hair transplants, *id.* ¶¶ 14, 36, 43. Advanced has adequately stated a claim under the Fraud Act, and the motion to dismiss the count is denied.

## 2. The Deceptive Trade Practices Act

The complaint itself explicitly invokes only the Fraud Act and lacks reference to the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510. But Advanced argues in its response brief that it satisfactorily stated a claim under the Deceptive Trade Practices Act as well because the complaint pleaded the factual basis for that cause of action. *See* Pl.'s Resp. to Restore at 6 n.3 (citing *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)). Restore does not reply to this assertion or argue for the dismissal of this claim. *See generally* Restore's Reply (arguing that Advanced has not stated a claim under 815 ILCS 505, but never addressing a potential claim under 815 ILCS 510).

The Court agrees with Advanced that it would be improper to "dismiss" a claim under the Deceptive Trade Practices Act just because the complaint never explicitly invoked that statute. *See Johnson*, 574 U.S. at 12 (reversing dismissal for failure to

explicitly invoke Section 1983 because the complaint "stated simply, concisely, and directly events that, they alleged, entitled them to damages" under Civil Rule 8(a), and thus "informed the [defendant] of the factual basis for their complaint"). To state a claim under the Act, Advanced was required to allege that Restore "engaged in one of the types of deceptive conduct enumerated in the statute," *Patel v. Zillow, Inc.*, 2018 WL 2096453, at *4 (N.D. Ill. May 7, 2018). The Act lists 12 types of deceptive practices, including passing off one's services as those of another or causing likelihood of confusion or misunderstanding as to the source of services. *See* 815 ILCS 510/2(a). The complaint explicitly alleges that Restore engaged in deceptive practices by using Advanced's common law marks, likely causing confusion about the source or affiliation of Restore's services. Compl. ¶¶ 36–37. This is enough to survive dismissal for failure to state a claim at this stage, especially where Restore has not argued that the claim was improperly pleaded or that it lacks notice of a claim under the Act. So both claims under the state consumer protection acts survive.

### C. Breach of Contract

Next, Restore moves to dismiss Advanced's claim for breach of contract because it believes the claim cannot be squared with Advanced's claim seeking declaratory judgment that the same contract is now void. Restore's Mot. at 5–6 (arguing that Counts Three and Seven in the complaint are mutually exclusive). Restore argues that "[i]t is axiomatic that a contract cannot be both valid and enforceable and void." *Id.* at 6. Davis likewise moves for dismissal of the breach-of-contract claim against him, arguing that Advanced is claiming that the "contract is both enforceable and

18

unenforceable simultaneously." Davis's Mot. at 3–4. Davis also argues that Advanced simply fails to state a claim for breach of contract because the complaint is vague as to how long the contract required him to maintain confidentiality or when the disclosure (which allegedly caused the breach) was made. *Id.* at 3. But the Defendants' arguments are unconvincing, so the claim survives dismissal.

First, Civil Rule 8(d)(2)–(3) allows a plaintiff to plead in the alternative, even if it creates inconsistencies between legal theories. "Although a plaintiff may not obtain a double recovery, he may certainly plead multiple, even contradictory paths to a single recovery." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021); *see also Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001) (noting that plaintiffs may "plead in the alternative, even if the pleadings are inconsistent"). Here, the Court's understanding of the breach-of-contract claim and the declaration-of-voidness claim from the face of the complaint is that Advanced claims the Defendants breached the settlement agreement, and so the company is entitled to liquidated damages, *as well as* a release of their duty to perform under the contract in the future. *Compare* Compl. ¶¶ 49–55 (alleging a breach of the settlement agreement), *with id.* ¶¶ 78–79 (alleging that "a fundamental breach of the Agreement occurred, thereby voiding it and rendering [Advanced] free from obligation of any performance …."). If that is the case, then there is no inconsistency because both of those claims—at least as currently pleaded—could succeed. If the Court misunderstands and the claims are in fact inconsistent, that still would not be grounds for dismissal

19

at this early stage in the litigation, and so the Defendants' inconsistency arguments fail in any case.

Moving on to Davis's argument that the complaint fails to state a claim for breach of contract because it is speculative and vague, Davis's Mot. at 3, the Court disagrees. Yes, it would have been prudent and helpful for Advanced to attach the settlement agreement to the pleadings (filed under seal and redacted for public filing, if needed) so that the Court and Defendants could better understand the contract's requirements. But Davis cannot escape a breach-of-contract claim by merely arguing that he is not sure what was in a contract that he himself signed (and admits to having been a party to).[8] Advanced alleges that the Defendants breached the settlement agreement when Davis gave vendor lists and surgical procedures to Restore and then failed to notify Advanced of the dissemination of its trade secrets as required by the contract. *See* Compl. ¶¶ 49, 52–55. That the complaint does not specify exactly which trade secrets were shared—or when he shared them—does not warrant dismissal at this stage. With the categories of secrets having been alleged in the complaint, the specific identification of which contract is at issue, and the litigation history between all parties in this case, Davis has ample notice of the contract claim against him.

Having rejected all arguments for dismissal of the breach-of-contract claim raised by the Defendants, the motions to dismiss Count Three are denied.

---

[8]Although the Court agrees with Davis's assertion that "[i]t is not [his] burden to read the Agreement" to understand the claims against him, the Court disagrees that the complaint itself does not provide sufficient notice. *See* R. 46, Davis's Reply at 2.

## D. Misappropriation of Trade Secrets

Davis also argues that Advanced's claim for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Illinois Trade Secrets Act, 765 ILCS 1065, should be dismissed because the complaint lacks sufficient detail to put him on notice.[9] Davis's Mot. at 5–6; *see also* Davis's Reply at 2–3. According to Davis, the categories of trade secrets identified in the complaint are "not protected as trade secrets without more," and the complaint is devoid of allegations establishing their secrecy. Davis's Reply at 2–3. The Court disagrees, and so Davis's motion to dismiss the misappropriation claim is denied.

Under both the state and federal statutes, Advanced must adequately allege that (1) Advanced had protectable trade secrets; and (2) Davis misappropriated the trade secrets by (3) using the trade secrets in his business or work. *Sonrai Sys.*, 658 F. Supp. 3d at 613. A trade secret is "business-related information that the owner of which has taken reasonable measures to keep secret and from which the owner derives economic value from the information not being generally known or readily ascertainable by others who could gain an economic advantage from the information." *Busey Bank v. Turney*, 2022 WL 92940, at *5 (N.D. Ill. Jan. 10, 2022).[10]

---

[9]The Court analyzes the federal and state law claims together because the standards under the federal and state trade-secrets laws are essentially the same. *See Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 613 (N.D. Ill. 2023).

[10]The definition of "trade secret" is substantially similar under both the federal and state trade-secrets laws. *Compare* 18 U.S.C. § 1839(3), *with* 765 ILCS 1065/2(d).

Once again, Advanced has narrowly pleaded this claim for misappropriation of trade secrets against Davis. The complaint alleges that Advanced owns valuable proprietary information in the form of vendor lists, customer lists, and surgical techniques for "No Shave FUE" that it takes measures to protect. Compl. ¶¶ 28, 58–60. It further alleges that Davis acquired the secrets in the course of his employment and was subject to confidentiality agreements but that he disclosed them to Restore when he was assisting Advanced as a contractor. *Id.* ¶¶ 28–29, 33, 63. And Advanced asserts that it derives economic value from the confidentiality of the trade secrets because it maintains a competitive advantage by protecting its "revolutionary" technique that it has "pioneered" and since patented, making it the nation's premier hair-restoration services provider. *Id.* ¶¶ 14, 28, 59–60, 64. These allegations are sufficient to put Davis on notice of the claim against him at this stage. Discovery will flush out the specific evidence in support of the allegations (including how to reconcile the claim of trade secrets with the public nature of the patents).

Davis argues that Advanced "must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." Davis's Mot. at 6 (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)). But the Seventh Circuit's decision in *IDX Systems* dealt with a later stage of litigation and thus a higher evidentiary standard for the plaintiff. *See id.* at 583; *Sonrai Sys.*, 658 F. Supp. 3d at 614 ("At the pleading stage, trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public

22

disclosure of the purported trade secrets." (cleaned up)). Where a plaintiff alleges "the information and the efforts to maintain its confidentiality … in general terms," dismissal is improper. *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014). Advanced has identified the specific technology (No Shave FUE) and the categories of additional trade secrets (customer lists, vendor lists, and search engine optimization) it is accusing Davis of disclosing to Restore. Davis's motion to dismiss the misappropriation claim is thus denied.

## E. Patent Infringement

Restore also argues that Advanced's claim for infringement of the '060 Patent for No Shave FUE should be dismissed for lack of standing because Advanced was not the legal assignee of the patent at the time that it filed this suit. *See* Restore's Add'l Mot. (invoking Civil Rule 12(b)(1)). Advanced responds that the delay in patent assignment was due to a typographical error in the executed assignment (naming "Advanced Hair Res*olu*tion LLC" as the assignee instead of "Advanced Hair Res*to-ra*tion LLC") (emphases added), but that the patent has always been owned by Advanced's president, Nik Rusa, who intended to assign the legal rights to Advanced in 2018. R. 69, Pl.'s Resp. to Restore's Add'l Mot. at 2–6. Because it seems clear at this point that Rusa's intent was to assign the patent to Advanced before this suit was filed, and it would waste judicial resources to dismiss the claim on this technicality now, Restore's additional motion is denied.

The Patent Act allows only a "patentee" to sue for patent infringement. *See* 35 U.S.C. § 281. "A patentee includes not only the patentee to whom the patent issued

23

but also the successors in title to the patentee." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020) (cleaned up). Thus, a party that was not the original patentee but has been assigned the patent rights by the owner in writing "has standing to bring suit for infringement in its own name." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *see also* 35 U.S.C. § 261. Plaintiffs in patent suits must also have the legal title to the patent, which is a matter of state law. *Schwendimann,* 959 F.3d at 1072. And "[t]he assignment of a patent's legal title is interpreted in accordance with contract statutes and common law in the state where the assignment took place …." *Id.* A district court considering the factual basis for standing under Civil Rul 12(b)(1) "may look beyond the pleadings and will consider all competent evidence." *Everything Baseball Ltd., LLC v. Team Athletic Goods, Inc.*, 2007 WL 9817892, at \*2 (N.D. Ill. Aug. 16, 2007).

In this case, Advanced contends—and Restore does not refute—that Washington law controls the effectiveness of the patent's assignment. *See* Pl.'s Resp. to Restore's Add'l Mot. at 3; R. 74, Restore's Add'l Mot. Reply. The Court agrees: the original patent holder was a Washington citizen who attempted to assign the patent to a Washington LLC with a Washington address and whose sole member was a Washington citizen. *See* R. 70, Rusa Decl.[11] Washington courts apply the "objective theory

---

[11]Although Advanced asserts that the assignment itself was executed in Washington, it provides no record evidence for this. *See* Pl.'s Resp. to Restore's Add'l Mot. at 3. Because neither party disputes that Washington law is applicable and it makes presumptive sense for the assignment to have been executed in the same state as the assignor and assignee, the Court need not delve further into this factual ambiguity for the purposes of this motion.

24

of contract interpretation," thus attempting to "ascertain the intent of the parties from the ordinary meaning of the words within the contract." *Nye v. Univ. of Wash.*, 260 P.3d 1000, 1004 (Wash. Ct. App. 2011). Courts "may consider extrinsic evidence to determine the specific words and terms used, but not to show an intention independent of the instrument." *Id.* Extrinsic evidence may include the objective of the contract, the circumstances surrounding it, the subsequent conduct of the parties, and the reasonableness of the respective interpretations. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 266 (Wash. 2005).

All of the extrinsic evidence in this case supports a finding that Rusa intended to assign the patent to Advanced in 2018, before the suit was filed. First, the botched patent-assignment sheet lists Advanced's business address in Bellevue, Washington, which is the address that Advanced was headquartered at the time of the first attempted execution. *See* R. 58-1, Patent Assignment; Rusa Decl. ¶ 7. Rusa's declaration also states that he was not aware of any company by the name of "Advanced Hair Resolution LLC," and he has since executed a valid assignment to the proper business name. Rusa Decl. ¶ 6; *see also* R. 60, Am. Exhs., Corr. Patent Assignment at 3–4 (ECF page numbers). Rusa was also the original patentee and the president of Advanced, Rusa Decl. ¶ 2, so it logically follows that he intended to assign the patent to his employer and not a separate entity that exists at the same address. Finally, the application data sheet (signed in September 2017, before the first assignment attempt) for the patent lists Advanced (under its correct company name) as the applicant and assignee. R. 71-5, Exh. 5, App. Data Sheet. Aside from the scrivener's error on the

25

2018 assignment itself, there is nothing to suggest that Rusa intended to assign the patent to a company other than Advanced, much less a company that this Court has no reason to believe exists.

Restore maintains that Advanced needed to have been the rightful owner of the patent at the time that it filed this lawsuit in late 2024, and that the recent correction of the assignment cannot cure the deficiency. Restore's Add'l Mot. Reply at 1–2. The Court agrees that, where a plaintiff in a patent suit lacked legal title of patent at the time of filing, it cannot cure the standing defect by acquiring the patent after the fact. *See Everything Baseball*, 2007 WL 9817892, at *3 (explaining that the Federal Circuit has rejected theories of "retroactive standing," even where a later assignment purports to apply retroactively, and so the correct remedy is dismissal). But federal courts have declined to dismiss patent suits in light of evidence showing that the patentee intended to assign the patent to the plaintiff *before* the suit was filed and only later realizes their error during the litigation. *See id.* at *3–5 (explaining that the court could "constru[e] the Assignment, at least for purposes of the instant motion, to find that [the plaintiff] was the assignee" at the time the suit was filed). Maybe (but maybe not) Restore will uncover evidence that Advanced Hair "Resolution" LLC does exist or that otherwise undermines the case in favor of Rusa's intent, but that is an issue better addressed in a summary judgment motion after the parties have had the benefit of discovery. Given the strength of the evidence supporting that Rusa intended to assign the patent to Advanced in 2018, and the interest in judicial

26

efficiency, the Court declines to dismiss the patent-infringement claim for an apparent typographical error. Restore's additional motion is denied.

## F. Declaratory Claims

The final three claims that Advanced brings against the Defendants—and that they now move to dismiss—seek declaratory judgment. The Declaratory Judgment Act provides that the district courts "may declare" a party's legal rights in cases within their jurisdiction. 28 U.S.C. § 2201(a). This permissive language means that district courts can also *decline* jurisdiction when appropriate. *See Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). To be sure, there "must be well-founded reasons for declining to entertain a declaratory judgment action," *Capo, Inc. v. Dopitics Med. Prods., Inc.*, 387 F.3d 1352, 1354–55 (Fed. Cir. 2004), but the trial court has "substantial discretion" in deciding whether to exercise its jurisdiction. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). The Court considers each claim seeking declaratory relief—and the Defendants' arguments for dismissing them—in turn.

## 1. Disparagement

Advanced's first claim for declaratory judgment seeks a declaration that Advanced did not engage in unfair business practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(8), when it publicly posted that Katona, who had done much of the work used in Restore's advertisements, now works for

Advanced. Compl. ¶¶ 73–76. Restore moves to dismiss this claim, arguing that the Court lacks subject matter jurisdiction, and, alternatively, that Advanced fails to state a claim under Civil Rule 12(b)(6). Restore's Mot. at 14–18. On jurisdiction, Restore concedes that complete diversity exists in this case, Restore's Reply at 5–6, but argues that the amount-in-controversy requirement is lacking and that there are no grounds for supplemental jurisdiction because the claim does not arise from the same case or controversy as the federal claims, *id.* at 5–7. The Court disagrees on both fronts.

"[I]n declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal jurisdiction would exist over the presumed suit by the declaratory judgment defendant." *Ne. Ill. Reg'l Commuter R.R. Corp. v. Hoey Farina & Downes*, 212 F.3d 1010, 1014 (7th Cir. 2000) (cleaned up). The amount in controversy for declaratory actions "is measured by the value of the object of the litigation." *Hunt*, 432 U.S. at 347. Restore argues that the complaint does not request money damages or connect this claim to a dollar amount. Restore's Reply at 6. It is true that Advanced could have more clearly alleged the facts upon which it bases its invocation of federal jurisdiction for the disparagement claim. But the complaint does allege that Restore has already threatened to sue Advanced for unfair business practices, Compl. ¶ 76, and so that suit is the one the Court must look to for the amount in controversy. The cost of potential monetary damages in that underlying would-be disparagement suit also go towards the amount. Thus, it is not a legal

28

impossibility that the claim could rise to $75,000, and the Court finds that it does have diversity jurisdiction over Count Six.[12]

Next up is Restore's argument that Advanced fails to state a claim for a declaration of no unfair business practices under Civil Rule 12(b)(6). Here, Restore argues that the complaint is vague because it does not describe the posting at issue or attach to the complaint the letter that Restore allegedly sent Advanced, so it has not sufficiently alleged an "actual controversy." Restore's Reply at 8. A claim for disparagement under the Deceptive Trade Practices Act, 815 ILCS 510/2(a)(8) requires: (1) a statement about a competitor's goods or services; (2) that is untrue or misleading; and (3) that was made to influence the public not to buy those goods or services. *Pekin Ins. Co. v. Phelan*, 799 N.E.2d 523, 526 (Ill. App. Ct. 2003).

Here, the complaint sufficiently alleges facts going to each of these requirements. Advanced alleges that it "post[ed] the truthful information that the doctor who completed the work discussed in many of … Restore's advertisements is now employed by" Advanced. Compl. ¶ 74. And if the information is truthful, then Advanced would not have made an untrue or misleading statement and thus would be entitled

---

[12]The Court also notes that, although Advanced did not choose to pursue this argument, supplemental jurisdiction would also likely be a proper basis for federal jurisdiction. The disparagement claim is related to the companies' competition histories with one another and, more importantly, a determination of whether Advanced is "attempting to capitalize on Restore's goodwill and brand awareness as well as associating [Advanced's] services with Restore's" is necessarily intertwined on Advanced's mirror-image claims that Restore is trading on Advanced's goodwill in advertising. Compl. ¶ 76. These reasons also lead the Court to reject Restore's argument that entertaining this claim would not resolve a controversy, Restore's Mot. at 17, because the controversy is already implicated in the claims for unfair business practice and infringement.

to a no-disparagement declaration. And Advanced alleges that only "false statements intended to reduce the reputation" of a business amount to disparagement, *id.* ¶ 75, which Advanced says it did not do. True, Advanced could have been clearer in putting Restore on notice of which specific statute Advanced was invoking in seeking a declaratory judgment and in pleading the reverse elements more explicitly. And it likewise would have been helpful for Advanced to attach the letter it allegedly received from Restore. But given the allegations in the complaint, there is no sound reason to dismiss this claim based only on the argument that Restore supposedly does not know which letter or postings Advanced is referencing in its complaint. Thus, Restore's motion to dismiss Count Six is denied.[13]

### 2. Tortious Interference

Restore next moves to dismiss Advanced's claim seeking declaratory judgment that it did not tortiously interfere with Restore's contract with Katona. Restore's Mot. at 14–19. Here, Restore argues that the Court lacks subject matter jurisdiction over the claim because it is not part of the same case or controversy as the others and the requirements for diversity jurisdiction are lacking. *Id.* at 14–17. The Court agrees that it does not have a basis to exercise jurisdiction over this claim, so it is dismissed.

---

[13]The Court understands Restore's motion and reply brief to argue that Katona is a necessary party to the tortious interference claim (Count Eight) only, and not also the disparagement claim. *See* Restore's Mot. at 17–19; Restore's Reply at 7. So the Court does not address that argument in connection with this claim, and in any case, Katona is likely not a necessary party to this claim because the claim has no impact on *his* rights or claims against any of the parties involved.

30

As explained earlier, jurisdiction over declaratory judgement claims depends on whether the Court would have jurisdiction over the "presumed suit by the declaratory judgment defendant." *Ne. Ill. Reg'l Commuter R.R.*, 212 F.3d at 1014. So Advanced carries the burden of establishing that the Court has subject matter jurisdiction over a potential suit for tortious interference of the Katona contract, and Advanced has not done so. The complaint alleges that Advanced was accused of tortiously interfering in Restore's contract with Katona, Compl. ¶ 81, but that Advanced "is not and was not aware of any such contract nor the terms of what such contract may be," *id.* ¶ 83. Advanced acknowledges that Katona and Restore are engaged in litigation to determine the validity of that contract currently, *id.* ¶ 82, but argues that state law insulates it from any potential claim that it was using Katona's right to publicity, *id.* ¶ 84. These vague allegations—and the admitted lack of information on the contract itself—prevent the Court from determining whether the nascent tortious-interference claims arises from the same operative facts as the other jurisdiction-secure claims in the case and whether even the amount in controversy is met. This is not an instance where the Court can estimate the value of the underlying tortious interference suit based on typical claims in similar cases: it could very well be that this contract does not exist or that it does exist and is extremely unique. There are simply not enough factual allegations upon which to base federal jurisdiction.

The vague nature of Advanced's pleading in Count Eight also leads to a failure to state a claim for tortious interference under Civil Rule 12(b)(6). To adequately plead the declaratory judgment claim under Illinois law, Advanced would need to

31

allege facts going to the validity of the agreement and whether its actions could constitute a breach. *See Von Der Ruhr v. Immtech Int'l, Inc.*, 326 F. Supp. 2d 922, 927 (N.D. Ill. 2004) (listing the elements for a tortious interference claim). Advanced cannot allege anything as to the existence of the contract between Katona and Restore and instead only alleges facts on "information and belief." So the claim suffers from both a jurisdictional defect *and* a pleading defect. The claim is dismissed, for now without prejudice.[14]

### 3. Voidness

Both Defendants also move to dismiss Advanced's claim seeking a declaration that the settlement agreement is void, arguing that the claim is mutually exclusive with Advanced's breach-of-contract claim. Restore's Mot. at 5–6; Davis's Mot. at 3–4. For the reasons discussed earlier in this Opinion, the Court rejects the inconsistency argument. *See supra* 18–19. To the extent that Davis also puts forth a notice argument that this claim is not pleaded with the requisite specificity as to which trade secrets were divulged that led to the breach, Davis's Mot. at 3–4, the Court also rejects that argument for the same reasons it rejected it as to the misappropriation claim. *See supra* 20–22.

---

[14]Having dismissed the tortious-interference claim for lack of jurisdiction, the Court need not consider Restore's argument that Katona is a necessary party. *See* Restore's Mot. at 16–17. If Advanced repleads the claim, and the Court finds that it has jurisdiction, and Restore argues that Katona is a necessary party, the Court will then consider the merits of the argument.

Davis also argues that the amount-in-controversy requirement is lacking for this claim because Advanced "has not alleged what damages it would suffer by the hypothetical future enforcement of the breached agreement." Davis's Mot. at 5; *see also* Davis's Reply at 2. Davis misunderstands the calculus for the amount-in-controversy requirement in declaratory actions. As explained earlier, "jurisdiction is determined by whether federal jurisdiction would exist over the presumed suit by the declaratory judgment defendant," *Ne. Ill. Reg'l Commuter R.R.*, 212 F.3d at 1014, and the amount in controversy is "the value of the object of the litigation." *Hunt*, 432 U.S. at 347. Here, the object of the litigation in the presumed suit by Restore or Davis would be the settlement agreement. *See* Compl. ¶¶ 78–79. Although the Court cannot say with certainty the monetary amount that the Defendants stand to recover in a potential contract suit, the complaint alleges that the agreement calls for $200,000 in liquidated damages in the event of a breach. *Id.* at 5–6, 14. So Advanced has sufficiently alleged facts to meet the amount-in-controversy requirement for the declaratory judgment claim regarding the settlement agreement.

Finally, Davis requests dismissal of this claim on the basis that it does not meet the requirements for constitutional standing. Davis's Mot. at 5. According to him, no actual controversy exists and the claim would not serve the purposes of the Declaratory Judgment Act. *Id.* Advanced responds that the declaration of voidness would guide the parties by informing them that they have lost their rights to sue under the contract. R. 45, Pl.'s Resp. to Davis at 5. The Court agrees: entertaining

the present claim serves the interests of efficiency and clarity for the parties in the future.

As explained earlier, when jurisdiction is in place, federal courts are empowered to declare the rights of parties, and a court declining to exercise that power must have "well-founded reasons" for its decision. *Capo*, 387 F.3d at 1354–55. Declaratory judgment "should be … exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948). Indeed, "[t]he goal of the Declaratory Judgment Act is to allow for the efficient resolution of disputes by an *early* adjudication of the rights of the parties." *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) (emphasis added). The Court sees no reason to believe that allowing the parties to litigate the issue of the settlement agreement now—rather than leaving the parties uncertain of their rights and obligations under it for an unknown amount of time later—would not serve the goals of the Act. This is especially so where the Court declines to dismiss the breach-of-contract claim based on the same contractual agreement; rather than bifurcating the litigation into two stages or two cases, the parties may resolve their disputes in one suit. The Court is likewise unpersuaded by the contention that there is no "actual controversy" regarding the validity of the settlement agreement. In entertaining the breach-of-contract claim for that agreement—which is a live dispute before the Court for damages—the Court will undoubtedly need to interpret the contract to determine whether a breach has occurred and whether the contract is now void on a go-forward basis. So the Defendants' motion to dismiss the declaratory claim on the settlement agreement is denied.

34

## IV. Conclusion

For the reasons discussed in this Opinion, Davis's motion to dismiss the claims against him, R. 42, is denied in full. Restore's first motion to dismiss the claims against it, R. 17, is granted in part and denied in part. Restore's additional motion to dismiss the patent claim, R. 58, is denied. Advanced's claim seeking declaratory judgment of no tortious interference with contract is dismissed, though without prejudice and with leave to amend. The remaining claims against Restore for unfair competition, violation of state consumer protection law, breach of contract, patent infringement, and declaratory judgment on disparagement and voidness of the settlement agreement survive for now.

The amended complaint, if filed, is due on April 20, 2026. If no amended complaint is filed, then the dismissal of the tortious interference claim will become final.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2026

35